No. 32,586

THE PROTECTION STATE BANK, *Appellant,* v. INA D. BAKER, *Appellee.*

(53 P. 2d 469)

Opinion filed January 25, 1936.

*Howard T. Fleeson, Fred W. Aley, Carl G. Tebbe* and *Wayne Coulson,* all of Wichita, for the appellant.

*Jay T. Botts,* of Coldwater, for the appellee.

The opinion of the court was delivered by

THIELE, J.: The question in this appeal is whether certain land sought to be levied on under an execution was the homestead of the judgment debtor.

For many years LeRoy Baker and his family lived in Comanche county. His daughter, Ina D. Baker, kept house for a brother for some time prior to 1909, but then returned to her father's home, and by 1911 all the other members of the family had either died or established their homes elsewhere. For many years prior to 1927 LeRoy and Ina had occupied lands rented by the father. Each had acquired some personal property. In 1919 Ina purchased the real estate in question. In 1927 the owner of the land on which they resided sold the same and about that time the father erected a house on Ina's land and they moved to that house. Ina's land had only fifteen acres in cultivation and the remainder was used for pasture. At that time Ina was about forty-five years old and the father was eighty-nine. Notwithstanding his age, he rented another eighty acres on a crop basis and with a hired man he farmed and operated both places. Both the father and daughter owned cattle, and each had an account in the bank. The father purchased the groceries. The daughter assisted him with the outside work and looked after the house.

Sometime prior to 1930 the father borrowed money from the appellant bank, giving his note therefor, and later Ina signed either that note or a renewal of it. In 1930 the father died. We are not advised as to the note subsequently further than that March 15, 1933, the plaintiff bank recovered judgment against Ina D. Baker, and later caused an execution to issue. Ina's land was levied upon and subsequently sold by the sheriff. When his return was presented to the trial court the bank moved to confirm the sale, and Ina D. Baker moved to set it aside on the ground that both before and after the sale she had notified the sheriff the land levied on was her homestead, and in her motion she claimed the land as her homestead. On the hearing of the motion the defendant offered evidence from which the above statement of facts with respect to the relations between her father and herself and the occupancy of the farm is taken. The court denied plaintiff's motion to confirm the sale and allowed defendant's motion to set it aside. The plaintiff appeals.

Under the admitted facts, Was the land in question the homestead of Ina D. Baker?

The homestead provision of our constitution (art. 15, sec. 9) and the exemption of homestead provided in the code of civil procedure (R. S. 60-3501) are identical, and, so far as necessary to our discussion, read:

"A homestead to the extent of one hundred and sixty acres of farming land . . . occupied as a residence by the family of the owner . . . shall be exempted from forced sale under any process of law," etc.

and have received the consideration of this court in many cases and under many situations not here necessary to notice.

*Weaver v. Bank,* 76 Kan. 540, 94 Pac. 273, is a well-considered case in which some of our previous decisions were reviewed and authorities from other jurisdictions were quoted. It was there held:

". . . a right to exemption cannot originate without the existence of a family—of a household consisting of more than one person, yet, when the homestead character has once attached, it may persist for the benefit of a single individual (either the husband or the wife) who is the sole surviving member of the family." (Syl. ¶ 1.)

and *Ellinger v. Thomas,* 64 Kan. 180, 67 Pac. 529, where a contrary conclusion was reached, was later overruled. It was also held:

"Where a wife after the death of her husband continues to reside upon the family homestead, although she is its sole occupant, it is exempt against her own creditors as well as against the creditors of her husband's estate, irrespective of the time the indebtedness was incurred, and without regard to which spouse held the legal title to the property during their married life." (Syl. ¶ 2.)

The right of a single person to maintain a homestead right was again considered in *Koehler v. Gray,* 102 Kan. 878, 172 Pac. 25. In that case the husband had died owning the involved real estate and leaving a wife and an adult daughter surviving him. The widow died and thereafter the administrator sought to sell the real estate to pay his debts. The probate court made an order to sell, and on appeal to the district court its decision was affirmed. The daughter appealed to this court, which noted the trial court had followed *Battey v. Barker,* 62 Kan. 517, 64 Pac. 79, which justified the order made. Again, former decisions were reviewed, among them *Weaver v. Bank,* supra, the court saying:

"There the survivor was the widow of the former owner, and the rule as stated was limited to the survivorship of the husband or wife. We think, however, upon the same reasoning it should be extended to any member of the

family. The exemption is for the benefit of the family as a whole, and of each individual composing it, so long as the relation is not severed. (13 R. C. L. 545.) The circumstance that a daughter has arrived at majority should not, in our judgment, prevent her from being considered a part of her father's family. . . . Nor is it necessary to that relation that there should be a legal duty to support her." (p. 881.)

The court concluded:

"Property occupied as the homestead of the owner and his family remains exempt from sale for the payment of his debts after the death of himself (intestate) and his wife, so long as an unmarried daughter of full age, who had lived with him as a part of his family, continues her residence thereon without interruption. *Battey v. Barker,* 62 Kan. 517, 64 Pac. 79, overruled." (Syl. ¶ 2.)

It is principally upon the two cases above noted that appellee relies to support the trial court's judgment.

In times past there has been some confusion as to the extent homestead rights would continue and to whom they were available, but the above decisions have largely clarified the situation. But what is the effect of their holdings as applied to the facts in the instant case? It is clear that when LeRoy Baker and Ina D. Baker moved on the land in controversy in 1927, they constituted a family, but whose family was it? We are advised by appellee's brief that LeRoy Baker, his wife and four children came to Comanche county in 1884 and that the family gradually decreased in numbers until 1911 when it consisted of himself and Ina, who was the youngest child, and that it so continued to 1930, when LeRoy died. The mere statement of the facts shows it was the family of LeRoy that persisted, it was not the family of Ina. She never had a family of her own, her father was not dependent upon her, and if she is now the family it is only because she is the sole remnant of her father's family. Assuming that LeRoy, because of improvements made by him, had homestead rights in the involved land, those homestead rights might persist and go to Ina as the sole survivor of the family, but the exemption would pertain to the father's debts and not to Ina's.

Although the facts therein were different, the reasoning and holding in *Solomon Nat'l Bank v. Birch,* 121 Kan. 334, 246 Pac. 1007, are persuasive here. There adult sons sought to assert a homestead exemption claim against their own, not their ancestor's debts. In the opinion it was said:

"The general purpose of a homestead exemption is that upon the death of the owner a certain share of his property shall be exempt from his debts

to his surviving spouse and minor children who constituted his family. The central idea of an exemption to the family is that of dependence upon the head of the family, the dependence of persons who are under his roof and control and to whom he furnishes shelter and protection because of some legal or moral obligation to them. Express provisions of statute may, of course, limit or extend the membership of a family, but the element of dependency enters largely into what is called the family relation, and that relation must exist in order that the exemption may apply. (*Elliot v. Thomas,* 161 Mo. App. 441.) In many of the states it is held that adult children cannot claim the benefits of the homestead. (29 C. J. 1004.) These rulings depend in part on statutes defining exemptions. In our state the homestead benefits have been extended to an adult daughter who was and had remained a member of the family as it existed in the lifetime of the father and mother. (*Koehler v. Gray,* 102 Kan. 878, 172 Pac. 25.) The exemption there awarded to the adult unmarried daughter was from a sale of the home for the debts of her intestate father. The exemption has been applied to the debts of the spouse of the deceased homesteader as well as to his debts. (*Weaver v. Bank,* 76 Kan. 540, 94 Pac. 273.) There is a reason, however, for this extension of benefits because of the oneness of the husband and wife, and that each of them share in the control and management of the children of the family, but the exemption has never been extended to the property of adult children from sale for the payment of their own debts. It is unreasonable to think that it was within the intention of the lawmakers that the property of a deceased homesteader which descended to adult children should be exempt from sale for the payment of their own debts because they still lived on what was once the homestead of the deceased father. On the theory of defendants they can carry on business until they are four-score years old and claim exemptions against their own debts as members of the family of their father, who died a half century before." (p. 337.)

and it was held:

"Upon the death of an intestate, who with his family had been in possession of a tract of land as his homestead, the title to certain shares descended at once to his widow and the children composing his family, and was exempt to the family as against the debts of the intestate and his widow, but the shares of the adult sons were not exempt from sale for their own debts." (Syl.)

In the case before us, we have a single adult person who never had a family, seeking, as against her own creditors, to establish homestead rights by virtue of the fact that she was a member of her father's family and now lives as the sole survivor thereof. We need not consider what homestead rights the father may have had, for no claim is being made for or against him. We do not believe it was the intention of the framers of our constitutional homestead provision in drafting that provision, or of the legislature in enacting the identical language in that part of the code of civil procedure dealing with exemptions, to declare that a single person, not the

head of a family, could acquire lands and have them occupied by the family of which he or she was a member, and after the family had by death or removal dispersed so that the owner alone remained, could under claim of homestead hold those lands exempt from his or her creditors. There is good reason for liberal interpretation of the homestead provisions in all circumstances; there is good reason for interpretation that will protect the widow and children in order that the family may not be broken up; but we do not believe it ought to be said that under the circumstances and facts existent in this case, the daughter has a homestead exempt from execution for her debts.

It may be noted that there is no claim the judgment upon which execution issued was invalid in any respect, nor is there any claim the sale was for an inadequate amount.

The trial court erred in allowing the motion to set aside the sale, and its decision is reversed. The cause is remanded with instructions to confirm the sale.

HARVEY, J., not sitting.